# THE FIDELITY AND DEPOSIT CO. OF MD. *vs.* STATE, USE OF COUNTY COMMISSIONERS OF CHARLES COUNTY, ETC..

*Validity of Order of County Commissioners Directing Collectors of Taxes to Pay a Sum of Money—Levy of Tax For a Particular Purpose Part of General Fund—Liability of Surety on Bond of Collector.*

An order signed by the Clerk of a Board of County Commissioners, issued in pursuance of a verbal order of the board, directing a collector of taxes to pay a certain sum of money to a designated person, is valid, although no entry concerning such order was made on the records of the board.

When a collector of taxes has received and recognized such order and promised to pay it from funds collected by him for the county, but fails so to do and misappropriates the money, the surety on his bond is liable therefor.

Under Code, Art. 25, sec. 7, money levied by County Commissioners under estimate for a particular purpose (other than educational) is a part of the general fund and may be used for other lawful purposes.

Code, Art. 25, sec. 7, requires County Commissioners to make a tax levy by estimate of a sufficient sum to discharge all lawful claims against the county, and Art. 81, sec. 44, provides that every collector shall collect the amounts levied and pay the same to the Commissioners or their order, and that money levied for educational purposes shall be levied separately from the other items and be payable to the School Commissioners. In this case the County Commissioners directed a collector of taxes to pay a certain sum to a named party "on account of Insane Pauper fund for 1900." The collector promised to pay the sum to the payee of the order but failed to do so nor did he pay the amount thereof, which he had collected, to the County Commissioners. In an action on his bond which was conditioned to pay to the Commissioners or their order the several sums of money which he should receive, *held*, that the amount levied for insane paupers was a part of the general levy and subject to disbursement by the Commissioners, and the order in question was valid, although actually made payable to a person having a claim against the county not connected with the support of the insane, and that since the collector has failed to pay the money collected by him as ordered by the Commissioners, the surety on his bond is liable for such default.

Appeal from the Circuit Court for Charles County (MER-RICK, J.)

The defendant's second plea averred that "the said sum of two hundred and three dollars and twenty-three cents, mentioned in the declaration, was not levied by the County Commissioners of Charles County merely for their use, and was not lawfully payable by them, or upon their order, to the said Charles A. Mason, and that the said William A. Fisher was not, and is not, answerable by law for the payment thereof in manner and form as in said declaration set forth. For this defendant says that the said sum of two hundred and three dollars and twenty-three cents, for the payment of which to the said Charles A. Mason the said alleged order, purporting to be the order of said County Commissioners, was written and given, was a part of that portion of the amount levied by the said County Commissioners in the year eighteen hundred and ninety-nine, to pay for the care, support and maintenance of the insane paupers of Charles County, for whose care, support and maintenance the said County Commissioners were then required by law to make provision. constituting a separate fund, commonly known and designated as the "Insane Pauper Fund," which was collectible by said Fisher, as Collector of Taxes for Second Collection District for Charles County, by virtue of his appointment as such Collector in the year 1899, and which, as had been duly certified to him by the Clerk of said County Commissioners, in the copy and statement required by Article 81, section 42, of the Code of Public General Laws of Maryland, as that portion of said "Insane Pauper Fund" for which he was answerable out of the levy of the year eighteen hundred and ninety-nine, could only lawfully be used by said County Commissioners, or upon their order, to pay for the care, support and maintenance of the insane paupers of Charles County as aforesaid; whereas, the said alleged order, which particularly sets forth that the said sum of two hundred and three dollars and twenty-three cents, therein mentioned, is to

be paid by said Fisher, as said Collector, to the said Charles A.. Mason, or order, " on account of Insane Pauper Fund for 1900, Levy of 1899," was wrongfully and unlawfully written and given to the said Charles A. Mason, the payee in said alleged order named, in payment of, and for and on account of, money due said Mason by said County Commissioners for work done by him in repairing and making the public roads and bridges of said Charles County, as one of the duly appointed road supervisors of said county, as the said Fisher well knew, which money due said Mason as aforesaid the County Commissioners of Charles County could not lawfully have paid, or could only lawfully have given order for the payment of, out of such amount, or by order on such fund, as may have been levied by them for the purpose of paying for work done in repairing and making the public roads and bridges of Charles County, constituting another separate fund, commonly known and designated as the " Road and Bridge Fund," and not out of said " Insane Pauper Fund," in the absence of authority, which had not been given, by legislative enactment." The trial Court sustained a demurrer to this plea.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, SCHMUCKER and JONES, JJ.

*L. Allison Wilmer* (with whom was *Walter J. Mitchell* on the brief), for the appellant.

The demurrer to the second plea should have been over-ruled. This plea sets forth fully that the alleged order was given Mason, as Road Supervisor, for the payment, in fact, for work on the public roads ; and that it was not lawful for the County Commissioners, even by an order properly exe-cuted, to have paid this claim against the county out of a fund particularly levied and set apart for the care, etc., of insane paupers, as it appears from the face of the alleged order was sought to be done.

While County Commissioners may levy in whole or in part,

by estimate (Code, Public General Laws, Article 25, section 7), they must levy for public purposes (*Cooley on Taxation*, page 55); and having levied for specific public purposes they can only apply sums so levied to such specific purposes. The public notice required to be given by Code, P. G. L., Article 25, section 11, would seem to support this view. And the obligation of the surety on the Collector's bond is that he should pay the money in discharge of the tax levied. (*Frown-felter* v. *State*, 66 Maryland, 87.

The declaration sets forth that the sum of $203.23 was levied for the use of the County Commissioners, and that said Fisher was required, not only by the alleged order, but by the copy or transcript delivered to him under section 42, Article 81, of the Code, to pay the same to Mason; but the second plea asserts that this is not true as stated, and alleges, as the demurrer admits, that the sum for which the alleged order was given was a part of that portion of the amount levied in 1899 specifically for the care, etc., of insane paupers; and that this was certified to Fisher. In other words, that Fisher was not only notified what amount of taxes he had to collect, but how the County Commissioners had disposed of it; and that he was only answerable to pay over the taxes collected by him for the purposes certified to him.

Let us suppose the County Commissioners had levied two hundred dollars to pay a claim of A. B., for printing, and had so certified to Fisher under section 42, Article 81. This would be practically an order on Fisher to pay to A. B., a notice, as was the fact from the levy made, that this was A. B.'s money; and the County Commissioners could not have used this money, or required Fisher to pay it, for road purposes for which they are required to levy specifically by a local law. (A. A., 1898, ch. 284.) So Fisher knowing, as the plea states, that this was a claim for road work, had no right to pay it out of the portion of the taxes for which he was answerable to pay for the care, etc., of insane paupers, even if the portion of the insane pauper fund for which he was answerable had not been exhausted by previous payments, as to which there is no evidence.

That the County Commissioners cannot use a fund levied for a specific purpose for some other purpose seems to have been the opinion or judgment of the Legislature in the enactment of the Act of 1890, chapter 7, which authorized the County Commissioners of Charles County to pay out of any funds not otherwise appropriated a sufficient sum to pay the amount due for road purposes for 1889.

If the County Commissioners may take two hundred dollars from the fund levied for insane paupers to pay for road building, they may take the entire fund for the purpose, and thus expend more for road purposes than the law permits (A. A., 1898, ch. 284), while leaving the county in default to the hospitals which care for the insane; thus subjecting the county to possible vexatious suits and the taxpayers to extra levies and assessments.

The issue on the first plea raises the question as to whether or not the alleged order is the order of the County Commissioners; and the first and second exceptions relate to this question. The County Commissioners are, a body politic, with limited and prescribed powers. *Peters* v. *Prettyman*, 62 Md. 571; *Worcester County* v. *Melvin*, 89 Md. 37; *Code, P. G. L.*, Article 25, section 1. They may appoint a clerk to their board. But by what authority may they delegate to their clerk the power of issuing and signing orders, in his own name, or in their name, for that matter, for the payment of money? This is not among the clerk's duties prescribed either by the general or local law. Although F. D. Mudd, clerk, testified that the County Commissioners gave him a verbal order to issue the order in controversy, did this make the alleged order their order? It is not as though they had given a verbal order to Fisher directly, if it be contended an order for the payment of money mentioned in the bond need not be in writing. But there is no record or minute in the proceedings of the board that they ever gave such order. The fact that no record appears of any such order shows, we contend, that the clerk was mistaken in imagining and stating he received such order. And how can a corporation give a

verbal order in a case like this ?   How can it give a written order in such case by proxy, or except by proper and legal signatures and authentication ?

This alleged order has been treated as a piece of negotiable paper.   It was simply endorsed "Charles A. Mason," "T. L. Twiford."   There is no evidence that either the County Commissioners or Mason ever demanded payment of Fisher, and there is no evidence that Fisher ever saw the order, Twiford having simply written and spoken to him about it in such a manner, doubtless, as to make him suppose it was a proper order, thus securing his promise to pay.   There is no evidence and no endorsement that he ever accepted it.

We contend that the order in controversy is not an order of the County Commissioners; that to make it such it should have been legally signed or authenticated, either by the County Commissioners themselves, or by their president with the seal of the board attached.   That the alleged order was a nullity and void from the beginning; that no delivery, nor promises by Fisher to pay it nor endorsements, could give it life; and that it was not negotiable in any event.

*Adrian Posey*, for the appellee.

The demurrer was rightly sustained.   The law does not require any special tax to be levied or particular fund to be set aside for the care and maintenance of insane paupers.   And none was or can be levied.

With the exception of the money levied for school purposes which is specially required to be levied separate (Code, Art. 81, sec. 44), the County Commissioners levy by estimate one certain, fixed sum, without name or designation, to pay and discharge all debts and claims against the county.   They are required to do so by law, and being of limited jurisdiction, cannot exceed the power thus given them.   (Art. 25, sec 7.) The claims against the county are made up of numerous different items ; an estimate is made to cover each item ; they are for convenience, enumerated under different heads, the whole footed into one sum, and a rate of taxation levied upon

the taxable property of the county to yield the amount of said estimate, and the taxes so levied are placed in the hands of tax collectors to be collected and paid over to the County Commissioners or to their order. The designation of each item levied for is not a requirement of law, but a plan of the County Commissioners for their own convenience. They may get at the estimate they are required to make by any other method. If, then, the County Commissioners are not required to levy special funds to meet particular items, but one general sum by estimate for the whole, the designation of the different tems by name on the tax collector's books does not create special funds out of which they shall be paid. When the taxes so levied become due, the tax collectors are required to pay the whole sum (the amount levied for public school purposes excepted), to the County Commissioners or to their order. (Code, Art. 84, sec. 44.) The tax collector cannot question the legality of the order. He, in law, knows but one amount he has to collect ; a portion thereof he must pay to the School Commissioners, and the remainder he must pay over to the County Commissioners or to their order. His failure to do so is a breach of his bond.

The reason that the County Commissioners are not required to levy a separate sum of money for each item of possible expense of the county is obvious. The largest portion of the levy is made in advance, and at that time it is an impossibility to tell what will be the actual amount needed for many of the charges likely to come against the county. So, should the County Commissioners levy more than enough for any one item what is to become of the difference between the amount levied and the amount actually needed? If the contention of the defendant be right, the overplus would remain in the hands of the tax collector and could not be drawn out. The County Commissioners have no right to carry a surplus from year to year; neither have they the right to use money raised by taxation for one year to defray the expenses incurred in a subsequent year. The law does not say in so many words, but an implied authority is given the County Commissioners to ex-

pend all money levied each year to defray the expenses for the year for which they are levied. Again, the items of expense that come against a county are constantly changing. What is an item of expense in one year may not be in another. To illustrate: The County Commissioners of a county may have to provide for the maintenance of insane paupers one year, the next year there may be none. Suppose the one thousand dollars is levied for the purpose, and it turns out only one-half is used, and then the following year there are no insane paupers, what becomes of the unused balance? According to the effect of the plea demurred to it, as contended, being a separate fund, would remain in the hands of the tax collector if collected by the County Commissioners would remain in their hands until perchance some pauper again went crazy for whose use it might be expended. The same reasoning will apply to every item for which the County Commissioners must levy a tax. In a short while there would be numberless unused balances either in the tax collectors' or County Commissioners' hands of which they could not rid themselves to the great detriment of the taxpayers. Special legislation alone could relieve the situation, making the management of the county governments most complicated and troublesome.

Repeating, there is no separate fund required to be levied as an Insane Pauper Fund. The law only provides that such unfortunate individuals shall be cared for by the county to which they belong. (Code, Article 9, section 2.) When too much money is levied for the purpose the overplus can and should be used to defray other expenses of the county. To hold otherwise would result in a condition of affairs most hurtful to the public good.

The second point is as to the order mentioned in the declaration being the order of the County Commissioners. The first plea traverses the fact and the objections made to certain testimony offered by the plaintiff, constituting the first two bills of exceptions, and the two prayers of the defendant which were rejected, constituting the third bill of exceptions of the said defendant, are in that line. The order was signed

by the clerk to the County Commissioners, by their verbal authority, and no particular minute made thereof on the records of their proceedings as had been the custom in all such cases.    The question therefore is, is the order the order of the County Commissioners?

The fact that the clerk was verbally ordered to give the order and no mention was made of it upon the record of the proceedings of the County Commissioners, needs no comment further than to remark that such matters are only acts of detail.    The manner of giving the order and the mode of recording the fact in no way invalidates the legal force of the paper or affects the liability of the tax collector or his bondsman. The County Commissioners may or may not keep minutes of their proceedings, or they may keep some and not others. Whether they do or not is of no concern to the tax collector or his bondsman.

The law provides that the County Commissioners shall appoint a clerk, and it is a fair presumption following that he is expected to perform all the clerical work pertaining to the office.    (Code, Article 25, section 1.)    The law does not provide that the County Commissioners shall use any particular form in drafting upon the tax collector for funds belonging to the county.    All the tax collector is concerned in knowing, and that for protection against the possibility of other orders being given for the same money, is, as to whether the order is given in pursuance of an order of the County Commissioners, and to do this he is not tied down to any particular phraseology used in the order.    The order may be verbal or written.    In this case, the testimony shows that the order was written, duly presented as the order of the County Commissioners, was so recognized by the tax collector and a promise made to pay same.    The tax collector, therefore, is estopped, the orders, being drawn in the usual way, in the usual form, presented and a promise to pay made, from denying the genuineness thereof.    If the tax collector is so estopped, according to consistent reasoning, his bondsman is likewise estopped.

BRISCOE, J., delivered the opinion of the Court.

This suit was brought in the Circuit Court for Charles County against the appellant as surety on a tax collector's bond, to recover the sum of two hundred and three dollars, alleged to have been collected by William A. Fisher, as collector of taxes for the Second Collection District of Charles County, for the year 1899, and not paid over to the County Commissioners of that county or their order, as required by sec. 44, of Art. 81, of the Code of Public General Laws.

The condition of the bond is "that the collector shall well and faithfully execute his office, and the several duties required of him by law, and shall well and truly account for and pay over to the County Commissioners of Charles County or their order, the several sums of money which he shall receive or be amenable for by law, at such time as the law shall direct."

The record presents the county order which is the subject of controversy in the case, and it is as follows :-

County Commissioners of Charles County, Md.
No. 419.                              La Plata, Md., Sept. 3, 1900.
                    To Wm. A. Fisher, Collector 2nd District.
Pay to.............................................Chas. A. Mason      or order
Two hundred three................................................23-100 dollars,
on account of Insane Pauper Fund for 1900.
Levy of 1899.
$203.23-100.
                                              F. D. Mudd,
Endorsed                                Clerk and Treasurer.
Chas. A. Mason,
T. L. Twiford.

It appears from the record that the suit in the Court below was a joint one against the principal and surety, but as the collector was returned *non est*, and had absconded from the county, the trial was had against the appellant alone.

At the trial the defendant pleaded, first, that the order set out in the declaration and purporting to be the order of the County Commissioners of Charles County was not, either in form or in fact, an order of the County Commissioners ; second, that the order was not drawn upon a proper fund.

Issue was joined on replication to the first plea, a demurrer was filed to the second plea, and the Court sustained the demurrer.

There were three exceptions taken by the defendant at the trial, two to the admissibility of evidence offered on the part of the plaintiff and one to the rejection of the defendant's prayers. The judgment being against the defendant, it has taken this appeal.

As the principal questions involved on the appeal arise on the pleadings and the exceptions, they can be considered together.

It is admitted that Fisher, the collector, was duly appointed by the County Commissioners of Charles County and the defendant was surety on the bond; that the County Commissioners duly imposed and levied the taxes for the year 1899, as prescribed by law, and delivered a copy of the levied list to the collector for collection, and that the collector failed to collect and pay over the sum here in dispute to the County Commissioners or to their order as required by law.

The plaintiff to maintain the issue gave evidence that F. D. Mudd was the Clerk and Treasurer to the County Commissioners in the years 1899 and 1900; that the county order now in controversy was written and signed by him on September 3rd, 1900, and was issued by authority and direction of the County Commissioners of Charles County.

There was further testimony that the order was issued by the clerk, upon the verbal direction of the County Commissioners and it was their custom to give verbal orders to him to issue such county orders upon tax collectors for the payment of money due by them, and that in this instance there was no entry made among the records of the proceedings of the County Commissioners showing the issuing of this order.

There was also evidence that the order in question was duly assigned by the payee, Mason, to the plaintiff and that the collector sometime in the month of December, 1899, promised to pay the amount of the order to the plaintiff.

Upon this state of the case, as presented by the record, the appellant contends that inasmuch as the alleged county order was not signed by the County Commissioners or by the

president of the board with the seal of the board attached, it was not a legal order of the board, and being a nullity, there can be no recovery in this suit.    We cannot agree to this contention.

Now it appears from the order sued on, and from the uncontradicted evidence in the case, that this order was drawn and signed by Mr. Mudd, the clerk and treasurer of the Board and was by the special authority of the Board of County Commissioners of Charles County so directed to be drawn.    The fact that the clerk was verbally directed to draw the order, and he failed to make this entry on the minutes and among the proceedings of the board, would not of itself invalidate the order or relieve the collector from paying the money to the County Commissioners.    In the case at bar, the order was a written one, was recognized by the collector as an order of the County Commissioners, and he promised to pay it.

The next question to be considered is raised by the demurrer to the second plea, and that is, was the order in question drawn on a proper fund.

By the 7th section of Article 25 of the Code, vol. 1, page 408, it is provided, that the County Commissioners shall levy all needful taxes on the assessable property within the county, liable to taxation and provide for collecting the same, and they may make such levy in whole or in part by estimate * * * and shall pay and discharge all claims on or against the county, which have been expressly or impliedly authorized by law.

And by the 44th section of the 81st Article, it is further provided, that every collector receiving a copy of the assessment or rate, shall, within thirty days thereafter, proceed to collect the same, and shall pay the county tax to the County Commissioners or their order, within six months after receiving the copy thereof; and all monies levied for educational purposes by the County Commissioners of the counties shall be levied separately and distinctly from the other items of taxation, etc., etc.

It will be thus seen that the County Commissioners are required by law to levy by estimate a sufficient sum to cover and discharge all claims on or against the county, authorized by law, except monies levied for educational purposes, as provided by section 44 of Article 81, of the Code, and the collectors are required to collect the money thus levied and to pay the same to the County Commissioners, or their order.

Under the law, then, all money levied for educational purposes shall be levied separately and distinctly from the other items of taxation.    The levy for county purposes is payable to the County Commissioners or their order and the school levy is payable to the School Commissioners of the county.

The order in this case, then, being drawn payable out of a fund levied for county and not school purposes, was a proper order, and was payable out of any funds in the hands of the collector not otherwise appropriated.  The condition of the bond was that the collector would pay to the commissioners of Charles County or their order, the several sums of money which he shall receive or be answerable for by law, at such time as the law shall direct.    This the collector, in this case, has failed to do, and there can be no question, as to the surety's liability.

It follows then, that the demurrer to the second plea, was properly sustained.    The defendant's prayers were properly rejected and as we find no error in the rulings of the Court on the first and second bills of exception as to the admissibility of evidence the judgment will be affirmed.

*Judgment affirmed with costs.*